Hope Pordy
Elizabeth Sprotzer
SPIVAK LIPTON LLP
1700 Broadway
New York, New York 10019
Tel: (212) 765-2100
Fax: (212) 541-5429
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANE BUCHANAN, JAMES CHRISTOPHER DUERR, NICOLE NAPOLITANO, and WINSOME THELWELL,<br><br>                    Plaintiffs,<br><br>          v.<br><br>THE CITY OF NEW YORK, THE NEW YORK CITY CIVILIAN COMPLAINT REVIEW BOARD, and JONATHAN DARCHE, in his Official and Individual capacity.<br><br>                    Defendants. | **COMPLAINT AND JURY DEMAND** |

Plaintiffs Dane Buchanan, James Christopher Duerr, Nicole Napolitano, and Winsome

Thelwell (referred to herein as "Plaintiffs"), by and through their attorneys, Spivak Lipton LLP,

allege as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs, four former City Complaint Review Board employees, bring claims as

a result of the deprivation of Plaintiffs' rights and privileges secured by the United States

Constitution, Article I, and the New York State Constitution Article I, Section 8, by their

employers, the City of New York, the New York City Civilian Complaint Review Board and the

CCRB Executive Director, Jonathan Darche, in his official and individual capacity. Additionally,

Plaintiffs bring claims under the New York State Human Rights Law, Executive Law §§ 290 *et*

*seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Administrative Code §§ 8-107 *et seq.* ("NYCHRL"), due to the retaliatory practices by the City of New York, the Civilian Complaint Review Board, and the CCRB Executive Director, Jonathan Darche, in his official and individual capacity, as a result of Plaintiffs' participation in opposing discriminatory practices.

2.       This is a civil rights action to vindicate the rights of individuals employed by the City of New York and the Civilian Complaint Review Board ("CCRB" or "the Agency") to exercise their First Amendment right to speak out on matters of public concern without facing intimidation and retaliation by senior officials of the Agency.  Plaintiffs Dane Buchanan, James Christopher Duerr, Nicole Napolitano, and Winsome Thelwell have a combined fifty plus years of experience working for the CCRB.  They have performed their jobs with the clear purpose and intention of serving the public good by ensuring that complaints of police misconduct filed by citizens of New York City are processed fairly, timely, confidentially, and in accordance with applicable laws, policies and practices, with the utmost integrity.  During their tenure, Plaintiffs demonstrated exemplary performance and collectively, represent an impressive depth and breadth of knowledge about the most effective way for complaints of police misconduct to be handled.

3.       During the summer of 2020, a city-wide controversy erupted over the conduct of police officers within the New York City Police Department ("NYPD"), particularly, in response to the protests that filled the streets of New York City in the wake of the murder of George Floyd by police officers in Minneapolis, MN.  The public was demanding increased scrutiny of police interactions with members of the BIPOC community and rallying around major criminal justice reforms, including defunding the police and creating more transparency about complaints of

misconduct. For example, driven by the public's demand for greater accountability, on June 12, 2020, New York repealed Civil Rights Law §50-a which permitted law enforcement to shield police misconduct records from the public, and would now allow for police disciplinary records to be publicly disclosed.

4.      Plaintiffs, as citizens of New York, stood with the public in demanding greater accountability and transparency with respect to the handling of complaints of police misconduct against NYPD officers.

5.      However, unlike their fellow citizens who have been able to exercise their constitutional rights to express their views and opinions about the public's concerns about police misconduct, Plaintiffs have been subjected to a campaign of retaliation and harassment led by Executive Director Jonathan Darche for voicing their opposition to CCRB's practices and policies that run counter to the public interest.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the asserted claims occurred herein and defendants City of New York, the Civilian Complaint Review Board and Jonathan Darche, are located within the Southern District of New York.

8.      This court has supplemental jurisdiction over the Plaintiffs' state and city law claims, pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal law claims.

## THE PARTIES

### Plaintiffs

9.      Plaintiff, Dane Buchanan, was an employee of the New York City Civilian Complaint Review Board from March 1, 2009 until December 27, 2020.  Mr. Buchanan is a resident of the State of New York and resides in Richmond County.

10.      Plaintiff, James Christopher Duerr, was an employee of the New York City Civilian Complaint Review Board from September 2, 2003 until December 27, 2020.  Mr. Duerr is a resident of the State of New York and resides in Kings County.

11.      Plaintiff, Winsome Thelwell, was an employee of the New York City Civilian Complaint Review Board from November 27, 1995 until December 27, 2020.  Ms. Thelwell is a resident of the State of New York and resides in Kings County.

12.      Plaintiff, Nicole Napolitano, was an employee of the New York City Civilian Complaint Review Board from September 18, 2017 until December 27, 2020.  Ms. Napolitano is a resident of the State of New York and resides in New York County.

### Defendants

13.      The Defendant, City of New York, is a municipal corporation organized under the laws of the State of New York.  The City of New York has a principal office and place of business located at Broadway and Park Row, New York, New York 10007 and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, New York 10007.

14.      The Defendant, the Civilian Complaint Review Board ("CCRB") is an agency of the City of New York and maintains its principal place of business at 100 Church Street, New York, New York 10007.

15.     The Defendant, Jonathan Darche, is the Executive Director of the CCRB and has held that position since May 2017.  Mr. Darche maintains an office at CCRB's office located at 100 Church Street, New York, New York 10007. At all times material herein, Defendant Darche has been a "person" within the meaning of 42 U.S.C. § 1983.  Defendant Darche is sued in his official and individual capacity.

16.     At all relevant times mentioned herein, the City of New York, the CCRB and Executive Director Darche were Plaintiffs' employers within the meaning of the NYSHRL and the NYCHRL.

## FACTUAL ALLEGATIONS UNDERLYING ALL CLAIMS

### CCRB

17.     CCRB is an independent oversight agency empowered to receive, investigate, mediate, hear, make findings, and recommend action on complaints against New York City police officers alleging the use of excessive or unnecessary force, abuse of authority, discourtesy, or the use of offensive language. The CCRB was established nearly 70 years ago and was initially led by NYPD officials until Mayor David Dinkins sought to move the CCRB out from under the NYPD's authority and created an all-civilian board in 1993.

18.     In accordance with the New York City Charter, the Board consists of 15 members: the City Council appoints five Board members (one from each borough); the Police Commissioner designates three; the Public Advocate appoints one; and the Mayor appoints five. The Chair of the Board is jointly appointed by the Mayor and Speaker of City Council. The current Chair is Reverend Frederick Davie.

19.     The CCRB employs approximately 200 Investigators and other staff, and fields approximately 7,000 complaints per year.

20.     The CCRB holds monthly meetings throughout the five boroughs which are open to all members of the public.  Private citizens, community groups and various elected officials regularly attend these meetings.  The CCRB shares updates on CCRB activities and policies, and solicits comments from the public.  All members of the public are able to ask questions, and voice their opinions about policing in their communities and the CCRB's oversight of complaints of police misconduct.  There is a dedicated "public session" at each of the Board meetings. Videos and transcripts of the Board meetings are also publicly accessible via the CCRB website.

21.     As a public agency, the CCRB releases to the public a significant amount of information detailing the Agency's activities.  For example, the CCRB issues a minimum of 14 reports per year to fulfill its mandate to inform the public and New York City elected officials about Agency operations, complaint activity, case dispositions and police department discipline. These reports include monthly statistical reports, annual and semi-annual reports, as well as issue-based reports on topics related to police misconduct with recommendations on NYPD policies, procedures and training.

22.     Defendant Darche is a point of contact for any individual who enquires about the CCRB's practices.  Defendant Darche speaks directly to members of the public, fields phone calls from the public, and responds to email inquiries.

**Plaintiffs' Employment History**

23.     Mr. Buchanan was actively employed by the City of New York with the CCRB from March 1, 2009 until November 12, 2020, when he was summarily terminated by Defendants.  Mr. Buchanan remained on the City's payroll through December 27, 2020. Mr. Buchanan was employed as an Investigator from March 1, 2009 until September 29, 2015. He was employed as an Investigative Manager from September 30, 2015 to October 2, 2017, as a

Deputy Assistant Director from October 3, 2017 until August 1, 2020, and as Executive Agency

Counsel (civil service title)/Deputy Chief of Investigations from August 2, 2020 until the time of

his termination.

     24.     Mr. Duerr was actively employed by the City of New York with the CCRB from

September 2, 2003 until November 12, 2020, when he was summarily terminated by Defendants.

Mr. Duerr remained on the City's payroll through December 27, 2020.  Mr. Duerr was employed

as an Investigator from September 2, 2003 until August 1, 2009. He was employed as a

Supervisor of Investigators from August 2, 2009 until August 8, 2015, as Administrative Staff

Analyst from August 9, 2015 until September 5, 2015, as Deputy Assistant Director from

September 6, 2015 until December 31, 2016, and as Deputy Executive Director (civil service

title)/Co-Chief of Investigations from January 1, 2017 until the time of his termination.

     25.     Ms. Napolitano was actively employed by the City of New York with the CCRB

from September 18, 2017 until November 12, 2020, when she was summarily terminated by

Defendants.  Ms. Napolitano remained on the City's payroll through December 27, 2020.  Ms.

Napolitano held the position of Deputy Assistant Director (civil service title)/Director of Policy

and Advocacy from the beginning of her employment until the time of her termination.

     26.     Ms. Thelwell was actively employed by the City of New York with the CCRB

from November 27, 1995 until November 12, 2020, when she was summarily terminated by

Defendants.  Ms. Thelwell remained on the City's payroll through December 27, 2020.  Ms.

Thelwell was employed as an Investigator from November 27, 1995 until June 9, 2001. She was

employed as a Supervisor of Investigators from June 10, 2001 until May 31, 2005, as

Investigative Manager from June 1, 2005 until July 5, 2015, as Administrative Staff Analyst

from July 6, 2015 until August 8, 2015, as Deputy Assistant Director from August 9, 2015 until

December 31, 2016, and as Deputy Executive Director (civil service title)/Co-Chief of

Investigations from January 1, 2017 until the time of her termination.

**Plaintiffs' Opposition to CCRB Practices related to the Public's Concern Over the Handling of Police Misconduct Cases and Defendants' Campaign of Harassment and Retaliation in Response**

27.     Although the CCRB was established as an "independent" oversight agency over

the NYPD, and also intended to act independently of the power and influence of the Office of the

Mayor of New York City, Plaintiffs observed that the CCRB often acted deferentially to the

NYPD and/or the Mayor's Office, rather than acting in the best interest of the citizens of New

York.  Upon information and belief, Darche often skewed CCRB policies with a view towards

currying favor with the NYPD and/or the Mayor's Office, for his own personal and professional

gain.

28.     Plaintiffs repeatedly raised issues of concern to Darche about how complaints of

police misconduct were being handled by the Agency, how certain practices interfered with the

integrity of the investigatory process, and how the Agency's recommendations for action to be

taken on confirmed cases of police misconduct were being compromised.

29.     Plaintiffs exercised their First Amendment and state constitutional rights to speak

out on matters of public concern outside of their official job duties and responsibilities.

30.     In addition to the CCRB, the Office of the Inspector General for the NYPD New

York City Department of Investigation ("OIG-NYPD") serves as an oversight agency of the

NYPD and is charged with investigating, reviewing, studying, auditing and making

recommendations relating to the NYPD's operations, policies, programs and practices.

31.     Although not part of her job duties, Plaintiff Napolitano sought to foster a cooperative relationship between the OIG-NYPD and CCRB as she believed that the public would be better served by having these two NYPD oversight agencies cooperating with one another.  Plaintiff Napolitano challenged Darche and the CCRB to be more transparent with the OIG-NYPD. Plaintiff Napolitano was previously employed by the OIG-NYPD and therefore, was knowledgeable of their practices and how they aligned (or not) with the CCRB's own practices. Defendant Darche openly resisted any kind of close collaboration with the OIG-NYPD and in fact, actively impeded a close working relationship between the two agencies.

> a.  For example, Plaintiff Napolitano prepared a memorandum in response to a report issued by the OIG-NYPD which required that the CCRB advise the OIG-NYPD of any actions it had taken in response to OIG-NYPD's recommendations. In particular, the OIG-NYPD had inquired whether the CCRB investigates allegations of biased policing.[1] This question had also come up at a public Board meeting.  Plaintiff Napolitano prepared a response to accurately reflect that the CCRB does not investigate complaints of bias-based policing, *per se*, as that term is defined by OIG-NYPD, but does investigate potentially bias-related incidents (e.g., offensive language,

---

[1] *See,* p.8, OIG-NYPD Annual Report 2020:  "The Report further pointed out how the Civilian Complaint Review Board (CCRB), the City's primary agency charged with investigating allegations of police officer misconduct, does not investigate complaints of biased policing made against officers. This makes CCRB an outlier among the independent police review agencies that primarily handle complaints of police misconduct in the largest U.S. police departments."
https://www1.nyc.gov/assets/doi/reports/pdf/2020/OIGNYPD_SixthAnnualReportFinal_4.9.2020.pdf

immigration status). [2] Darche refused to adopt Plaintiff Napolitano's carefully drafted response and she was instructed by her supervisor to adopt Darche's re-characterization even though it was not an accurate representation of the scope of CCRB's activities with respect to bias-based policing.

b. Previously, in response to a 2019 report issued by the OIG-NYPD, Darche warned CCRB staff: "Any union protected CCRB staff who use the term "bias based policing" in a non-mocking fashion will be disciplined; and Any other CCRB staff who use the term "bias based policing" in a non-mocking fashion will be terminated."

32.     Another matter of public concern about which Plaintiffs openly spoke out about, involved an evolving policy about the use of footage from body worn cameras ("BWC") utilized by the NYPD and how such footage could be accessed during the course of a CCRB investigation. The use of BWC, and access thereto, has had strong public support as a tool for increasing the transparency of policing and improving police-citizen relationships.

a. Plaintiff Buchanan, along with Olas Carayannis, [3] drafted a memorandum providing comments with input from the Investigations Division (including Plaintiffs Duerr and Thelwell) on an initial draft of a proposed BWC policy in July 2019. The memorandum raised several concerning issues about the

---

[2] "Bias-Based Profiling," otherwise known as biased policing, is defined in Section 14-151 of the New York City Administrative Code as any discriminatory action by law enforcement that is motivated by a person's actual or perceived status protected by law.
[3] Olas Carayannis, Deputy Chief of Special Operations, is represented by the Organization of Staff Analysts, which recently organized certain employees of the CCRB and became the certified collective bargaining representative in or around spring 2020. Plaintiffs were excluded from this bargaining unit and therefore, did not have the same job security protections.

proposed policy, particularly the lack of direct access to BWC video footage. Upon review of the memorandum, Darche called Buchanan in a threatening voice, enraged by the criticisms, and shouted: "Who do I need to fire, Olas and you, or Olas, you, Chris and Winsome?"

b.  Plaintiffs continued to raise concerns about the BWC policy, and how the lack of cooperation and responsiveness by the NYPD was causing a delay in investigations, however, upon information and belief, neither the Agency nor the Mayor's Office wanted to press the issue with the NYPD.

c.  In the face of such inaction, Plaintiff Buchanan and Carayannis, with input from Plaintiffs Thelwell, Duerr and Napolitano, prepared an unsolicited memo to all senior staff on June 26, 2020, advising that there was a tremendous backlog in BWC requests that was affecting all investigations including investigations of police misconduct complaints arising from the summer 2020 racial justice protests.  Plaintiff Buchanan and Carayannis exhorted the CCRB to take action and stressed the urgency of necessary action as a matter of public concern: "The struggle for access to BWC is the struggle for the future of civilian oversight.  In this era of rightfully increased scrutiny of police accountability, we urge the Agency to seize this moment to do everything in its power to obtain unmediated direct access to BWC footage."

d.  This memo was "leaked" to the press and published on July 3, 2020.[4]  Darche and General Counsel for the CCRB, Matthew Kadushin, held Buchanan and

---

[4] ProPublica Article, July 3, 2020:  https://www.propublica.org/article/the-nypd-isnt-giving-critical-bodycam-footage-to-officials-investigating-alleged-abuse

Carayannis accountable for the leak, and repeatedly threatened that their roles within the CCRB would suffer as a result. In fact, soon after the memo was leaked, and in retaliation for expressing their views on a matter of such significant public concern which were then published, Darche set in motion a plan to strip Buchanan and Carayannis of access to critical information.

e.   On or about August 11 or 12, 2020, Darche spoke with Plaintiffs Duerr and Thelwell and advised that he no longer trusted Plaintiff Buchanan and Carayannis to do their jobs. Darche instructed Plaintiffs Duerr and Thelwell to come up with a plan to restructure Buchanan's and Carayannis's jobs so as to functionally demote them, and then to advise them of their diminished roles. Plaintiffs Duerr and Thelwell challenged Darche's decision and told Darche he would need to convey this information to them directly.

33.    Another matter of public concern about which Plaintiffs spoke out related to an increasing backlog of cases and a heightened concern about cases closing as a result of the expiration of the legally-mandated eighteen month statute of limitations without an investigation of the pending complaints being conducted.

a.   On June 24, 2020, independently and on her own initiative, Plaintiff Thelwell sent an email to Darche expressing several concerns about the CCRB's inaction in the face of the public's urgent demands to timely and thoroughly investigate *all* complaints of police misconduct. In the email, Plaintiff Thelwell expressed "The way to protect the Agency's reputation is to do good work and to aggressively root out police misconduct for every complaint." Some of the problems she highlighted are that "the Agency is silent on the

lack of cooperation of the NYPD on BWC," "that the CCRB allows substantiated cases to sit in panels sometimes up for 400 days," "the current plan to only interview officers in cases that made the news at the expense of other cases," and that the failure to address these issues indicates that the CCRB does not "have a way to equally and ethically serve the citizens of this City." Plaintiff Thelwell further wrote: "As a black person, a person who has fairly investigated police misconduct for over 20 years and as a manager who listens to my heartbroken staff, I find all of this outrageous and offensive. So far, all I have received for speaking out is anger and retaliation, with as recently as yesterday the exclusion of Chris [Duerr], Dane [Buchanan], Olas [Carayannis] and me (All Investigations Division Leadership), from your docket reviews with our managers, an action that has never before been done. I will however, continue to speak out. Silence is just not an option."

34. Another issue of public concern about which Plaintiffs spoke out related to a pattern of "flips" involving instances where panels comprised of members of the CCRB Board are convened to discuss cases and the recommendations of the Investigations staff, and overturned (i.e., "flipped") the disposition of the Investigator.

  a. Plaintiff Napolitano prepared a memorandum in July 2020, addressed to Darche and Chair Fred Davie, demonstrating that whether some complainants saw justice for misconduct was very likely related to which Board Members were assigned to their panels rather than the merits of their complaints. Plaintiff Buchanan, as well as Carayannis, provided assistance with the memorandum. Napolitano first sent the memorandum to her supervisor,

Jerika Richardson, (former) Senior Advisor and Secretary to the Board, who said she would send it to Darche. After Richardson left the Agency in August 2020, Napolitano forwarded the memorandum to Kadushin and the Director of Outreach and Intergovernmental Affairs, Yojaira Alvarez. Approximately one week later during a team meeting, Napolitano asked about the memorandum, Kadushin said to her, "Nobody told you to write that memo" – "that's not what you were asked to do" and the creation of the memorandum itself was "a problem" because it was "written down."

b. Additionally, all Plaintiffs repeatedly raised concerns about the increasing regularity of "flips" by Board panels contrary to long-standing practices.

35.    Shortly after the June 26, 2020 BWC memo was leaked to the press, Plaintiffs raised concerns about another matter of public concern related to virtual interviews of police officers, referred to by the CCRB as members of service (i.e., "MOS").

a. In an unsolicited memorandum authored by Plaintiffs Buchanan, Duerr and Thelwell, as well as Carayannis, with input from Plaintiff Napolitano, titled "Virtual MOS Interviews," Plaintiffs condemned an agreement with the labor unions representing MOS which allowed for the officers and their representatives to turn off their video feed during a remote interview. The authors raised the following concerns: "The inability to detect signals, prepared written testimonies, and other silent methods of interference would render the same effect of permitting such behavior, resulting in the degradation of the statement's reliability and the credibility of the entire CCRB investigation. Even the mere suspicion that this interference occurs,

and our inability to prevent it, seriously undermines the quality and integrity of these interviews and the Charter's[5] obligation to conduct 'complete, thorough and impartial' investigations." The memo concludes by invoking the concerns of all New Yorkers: "We cannot take a step backward when the City demands we march forward."

b.  After the "Virtual MOS Interview" memorandum was circulated, Darche and Kadushin contacted Duerr, at approximately 9pm that same day, and Darche expressed anger at Duerr for having written and circulated the memorandum. Darche also advised that he was told by someone "loyal" to him that a petition or memorandum of "no confidence" was being circulated among CCRB employees with the intention of having Darche removed as Executive Director.  He explicitly held Plaintiff Buchanan and Carayannis responsible for the "no confidence" petition/memorandum and questioned Duerr about who else was participating, and specifically, if Plaintiff Thelwell was involved.  Upon information and belief, Darche was referring to the June 26, 2020 BWC memorandum referenced herein in paragraph 32(c). In sum and substance, Darche communicated to Duerr that if they think they're going to get him fired, they're wrong and that he had been in such a position before and that he "always comes out on top." Darche also commented on Plaintiff Thelwell, saying, in sum and substance that he was done making concessions to her, and Kadushin also stated that they had a plan on how to deal with her.

---

[5] The "Charter" refers to the New York City Charter, Section 440, which gives the CCRB the power to investigate complaints by members of the public against members of the police department.

36.     All of the issues highlighted above are clearly matters of public concern –

cooperation between NYPD oversight agencies, access to BWC footage, MOS Interviews,

investigation backlogs, CCRB Board panel outcomes – and, indeed, were all matters raised and

discussed at the public CCRB Board meetings and otherwise, widely discussed by the public and

the media.

**Plaintiffs' Opposition to a Hostile Work Environment
and Discriminatory Practices at CCRB**

37.     Plaintiffs, and their co-workers, were subjected to a hostile work environment, led

by Defendant Darche, in which they were constantly subjected to intimidation, ridicule, insults,

and threats.[6]  Plaintiffs took steps to oppose this hostile, discriminatory and retaliatory behavior

by speaking out in the face of such inappropriate behavior.

38.     Darche often made lewd, rude, derogatory, offensive and/or disparaging

comments directed at, or in the presence of, CCRB employees.

39.     Plaintiffs supported others who spoke out against discriminatory and hostile

behavior, and/or those who otherwise opposed improper practices.  For example, Plaintiffs

openly supported a complaint by co-worker Olas Carayannis who filed an internal complaint

with the Office of Labor Relations in August 2020, and also brought the complaint to the

attention of one of the CCRB EEO Officers, raising concerns about discriminatory and hostile

behavior by Darche.  As part of the complaint, Carayannis, who identifies as transgender/gender

non-conforming (TGNC), identified comments and behavior by Darche that questioned

Carayannis's professionalism and participation at certain events because of Carayannis's

---

[6] Darche has previously been the subject of an EEO complaint filed by CCRB employees. https://www.nydailynews.com/new-york/manhattan/civilian-review-board-director-accused-inappropriate-comments-article-1.3196034

appearance.  Plaintiffs Buchanan, Duerr, Napolitano, and Thelwell intended to attend a meeting convened to address the complaint but they were refused attendance by Kadushin.  After receiving no redress, on September 29, 2020, Carayannis filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and named all four Plaintiffs as potential witnesses.

40.     Additionally, in the midst of the COVID-19 pandemic, the Agency continued to have three Black clerical workers continue to work in the office.  When White Investigators asked to return to the office, Darche said it was not safe.  When Plaintiff Thelwell raised the inconsistency, noting the disparate impact COVID has had on communities of color, Darche and Kadushin told her it was none of her business.

41.     At an Executive Staff meeting that was held on December 11, 2019, Defendant Darche verbally attacked and threatened Plaintiffs Duerr and Thelwell when they expressed a difference of opinion related to an agenda item concerning the CCRB's 911 Incident/Policy. Darche reacted by telling them that they were both fired, effective immediately.  When Plaintiff Thelwell, a Black female, did not immediately leave the room as she was hoping he would calm down and retract his firing remark, Darche – in Amy Cooper-like style[7] – aggressively pointed at Plaintiff Thelwell, towering and leaning over her, and said that not only was she fired but that he would call 911 on her. He did not threaten Plaintiff Duerr, a White male, with a call to the police. Darche subsequently rescinded his directive that both Duerr and Thelwell be fired.

42.     In addition to the threat to call 911 on Plaintiff Thelwell, Defendant Darche engaged in other behavior, of a discriminatory and/or harassing nature, directed at Plaintiff Thelwell including but not limited to, in early 2020, Defendant Darche told Plaintiff Thelwell

---

[7] https://www.nytimes.com/2020/07/08/nyregion/amy-cooper-false-report-charge.html

that he had met someone from a Jamaican police oversight agency during a conference in Mexico and told that person all about Plaintiff Thelwell, who is Jamaican. Darche then recommended that Plaintiff Thelwell contact him to see if she could get a job there; therefore, suggesting that she should return to her country of origin.

### Plaintiffs were Summarily Terminated After Speaking Out on Matters of Public Concern and Opposing Discriminatory and Improper Practices at the CCRB

43.    On November 12, 2020, Plaintiffs, with a combined fifty years of experience working for the CCRB, were informed that they were being terminated effective November 27, 2020; however, CCRB later decided to make the terminations effective December 27, 2020.

44.    Plaintiffs were not provided with any prior notice of their termination nor consulted, at any time prior to the termination announcement, regarding the staffing changes.

45.    Almost immediately after notification of their termination, and despite remaining on the payroll, Plaintiffs were immediately disconnected from access to the Agency server including emails, with no opportunity to effectively transition the work they were doing that was of vital importance to the Agency.

46.    Plaintiffs have been replaced with individuals with significantly less experience with CCRB operations, barely any experience in a managerial or supervisory role, and/or no prior relevant experience.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Violation of the First Amendment)

47.    Plaintiffs hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as fully set forth herein.

48.    Plaintiffs' right to freedom of speech is protected by the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983.

49.     At all times material herein, Plaintiffs actively spoke out on matters of public concern. The public has a vital interest in free and open discussion on these issues of public importance involving the City's investigation of complaints of police misconduct.

50.     After Plaintiffs spoke out on such matters of public concern, Defendants individually, separately, and/or jointly, engaged in actions, omissions and decisions aimed at denying Plaintiffs' rights and protections granted to them under law, including but not limited to, the summary termination of all four Plaintiffs without advance notice and without any reasonable justification.

51.     The actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, the Plaintiffs to lose wages, compensation, entitlements and rights. In addition, these actions, omissions and decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, the Plaintiffs to suffer humiliation and harm to their reputation, emotional and mental injuries, pain and suffering, financial and other adverse consequences, for which Plaintiffs seek full damages and make whole relief.

52.     Such actions, omissions, and decisions of Defendants, individually, separately, and/or jointly, were taken in response to, and in retaliation for, Plaintiffs' exercise of their constitutional and lawful rights to speak out about matters of public concern, in violation of the rights safeguarded under the First and Fourteenth Amendments to the U.S. Constitution.

53.     Such actions, omissions and decisions on part of Defendants, individually, separately, and/or jointly, including, but not limited to the termination of Plaintiffs' employment were taken under the color of law, and such actions, omissions, and decisions have deprived Plaintiffs of their rights, privileges, and immunities secured by the U.S. Constitution and laws in

violation of 42 U.S.C. § 1983. Liability and redress for such actions, omissions, and decisions exist under 42 U.S.C. § 1983.

54.    Defendants, individually, separately, and/or jointly, are fully liable to Plaintiffs under 42 U.S.C. § 1983 based on their authority and actual decisions and omissions.

55.    Defendants' actions, omissions, and decisions were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

56.    Plaintiffs' speech on matters of public concern was a motivating factor in the Defendants' decision to terminate their employment. Any other reasons offered for Plaintiffs' termination by the Defendants are false, and a pretext to hide discrimination and retaliation.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Violation of the New York State Constitution)

57.    Plaintiffs hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as fully set forth herein.

58.    Defendants have violated Plaintiffs' rights to free speech under the New York State Constitution Article I, § 8.

59.    At all times material herein, Plaintiffs actively spoke out on matters of public concern. The public has a vital interest in free and open discussion on these issues of public importance involving the City's investigation of complaints of police misconduct.

60.    After Plaintiffs spoke out on such matters of public concern, Defendants individually, separately, and/or jointly, engaged in actions, omissions and decisions aimed at denying Plaintiffs' rights and protections granted to them under law, including but not limited to, the summary termination of all four Plaintiffs without advance notice and without any reasonable justification.

61.     The actions, omissions and decisions of the Defendants, individually, separately

and/or jointly, were designed to cause, have caused, and will continue to cause, the Plaintiffs to

lose wages, compensation, entitlements and rights.  In addition, these actions, omissions and

decisions of the Defendants, individually, separately and/or jointly, were designed to cause, have

caused, and will continue to cause, the Plaintiffs to suffer humiliation and harm to their

reputation, emotional and mental injuries, pain and suffering, financial and other adverse

consequences, for which Plaintiffs seek full damages and make whole relief.

62.     Such actions, omissions, and decisions of Defendants, individually, separately,

and/or jointly, were taken in response to, and in retaliation for, Plaintiffs' exercise of their

constitutional and lawful rights to speak out about matters of public concern, in violation of the

rights safeguarded under the First and Fourteenth Amendments to the U.S. Constitution.

63.     Defendants' actions, omissions, and decisions were done in a knowing, willful,

reckless, and bad faith manner, and violate clearly established constitutional and statutory

provisions and rights of which a reasonable person would have known.

64.     Plaintiffs' speech on matters of public concern was a motivating factor in the

Defendants' decision to terminate their employment. Any other reasons offered for Plaintiffs'

termination by the Defendants are false, and a pretext to hide discrimination and retaliation.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Violation of the NYSHRL §§ 290 *et seq.* on the Basis of Retaliation)

65.     Plaintiffs hereby repeat, reiterate and re-allege each and every allegation in each

of the preceding paragraphs as fully set forth herein.

66.     Defendants acted in violation of the New York State Human Rights Law, Exec.

Law §§ 290 *et seq.*, by retaliating against Plaintiffs, including but not limited to summarily

terminating Plaintiffs without advance notice and without any reasonable justification, because they opposed discriminatory practices at the CCRB.

67.   As a result of Defendants' conduct, Plaintiffs have suffered both economic and emotional harm.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Violation of the NYCHRL §§ 8-107 *et seq*. on the Basis of Retaliation)**

68.   Plaintiffs hereby repeat, reiterate and re-allege each and every allegation in each of the preceding paragraphs as fully set forth herein.

69.   Defendants acted in violation of the NYCHRL, N.Y.C. Administrative Code §§ 8-107 *et seq*., by retaliating against Plaintiffs, including but not limited to summarily terminating Plaintiffs without advance notice and without any reasonable justification, because they opposed discriminatory practices at the CCRB.

70.   As a result of Defendants' conduct, Plaintiffs have suffered both economic and emotional harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court enter judgment in their favor and against Defendants, containing the following relief:

a.   Issue a Declaration that Defendants violated Plaintiffs' rights under the First Amendment of the United States Constitution and Article I, § 8, of the New York State Constitution;

b.   Issue an Injunction ordering the Defendants to cease from engaging in any further retaliatory action and ordering Defendants to reinstate Plaintiffs to their former positions and restore all pay and benefits lost as a result of Defendants' retaliatory actions;

SL-318840.1

   c.   Back pay damages against all Defendants for Defendants' violation of Plaintiffs' rights under the First Amendment of the United States Constitution, the New York State Constitution, the New York State Human Rights Law, and the New York City Human Rights Law;

   d.   Compensatory damages for Defendants' violation of Plaintiffs' rights under the First Amendment of the United States Constitution, the New York State Constitution, the New York State Human Rights Law, and the New York City Human Rights Law;

   e.   Punitive damages against all Defendants for Defendants' violation of Plaintiffs' rights under the First Amendment of the United States Constitution, the New York State Constitution, the New York State Human Rights Law, and the New York City Human Rights Law;

   f.   Attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, the New York State Human Rights Law and the New York City Human Rights Law;

   g.   Any and all other remedies that may appear to be just and proper and provided for in accordance with law.

Dated: January 25, 2021
New York, New York

Respectfully submitted,

Hope Pordy
Elizabeth Sprotzer
hpordy@spivaklipton.com
esprotzer@spivaklipton.com
SPIVAK LIPTON LLP
1700 Broadway, 21st Floor
New York, New York 10019
Tel: (212) 765-2100
Fax: (212) 765-8954
*Attorneys for Plaintiffs Dane Buchanan,
James Christopher Duerr, Nicole Napolitano,
and Winsome Thelwell*